FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ SEP 0 8 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

MADONNA MITCHELL,

                      Plaintiff,

              -against-

CITY OF NEW YORK, POLICE OFFICER VINCENZO
QUINZI SHIELD NO. 12560 OF THE 60TH PRECINCT,

                      Defendants.

-------------------------------------------------------------------- x

Docket No.

COMPLAINT AND
JURY DEMAND

10 CV 4096

ECF CASE

GLEESON, J.
J. ORENSTEIN, M.J.

Plaintiff Madonna Mitchell, by her attorneys, Stoll, Glickman & Bellina, LLP, for her complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of her Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a July 6, 2009 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, assault, battery, false arrest, false imprisonment, and malicious prosecution.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United

States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

## VENUE

6. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

7. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

8. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Police Officer Quinzi was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Quinzi was plaintiff's "arresting officer" and was under the command of the 60th

precinct. Defendant Quinzi is sued in his individual capacity.

10. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

11. Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

12. On July 6, 2009, at approximately 11:00 p.m., plaintiff and her boyfriend, Robert Norton, were walking near Stillwell and Surf Avenues in Brooklyn, New York to Astroland to play some games.

13. While they were walking, they saw police assaulting two kids.

14. Plaintiff took out her camera phone and started taking pictures of the officers assaulting the young kids. She took two pictures that came out blurry.

15. Police officers saw plaintiff taking photographs and started cursing at her, calling her names including "bitch".

16. Plaintiff was not doing anything that would interfere with the officers' restraint of the kids they were assaulting. She was standing about five feet away from the officers when she was photographing the assault.

17. An officer lunged at plaintiff, spun her around and pushed her face-down onto a NYPD tripod. He then punched her on the left side of her face from behind. Plaintiff's

3

boyfriend, Robert Norton, tried to get the officers off of plaintiff after they punched her. He plead guilty to obstruction of governmental administration at arraignments and was sentenced to 7 days of community service.

18. Plaintiff was handcuffed, taken into custody, and charged (along with her boyfriend as a co-defendant) with obstruction of governmental administration, resisting arrest, and disorderly conduct. Police Officer Vincenzo Quinzi (plaintiff's arresting officer) made false statements including accusing plaintiff of stepping between himself and one of the kids to prevent his arrest; of repeatedly yelling 'fuck you, you piece of shit'; of kicking water from the street on him; and of refusing to step aside to let him arrest the young kid. He further falsely accused her of resisting arrest lawful arrest.

19. Defendants took plaintiff to the precinct, where she was incarcerated until about 3:00 a.m. on July 8, 2009, when she was taken to Coney Island Hospital. Because she was constantly surrounded by police the entire time she was at the hospital, she was scared to report the injuries from the police assault and merely reported breaking out in hives. She was at the hospital for a few hours.

20. Plaintiff was eventually returned to the precinct. From the precinct, she was sent to Brooklyn Central Booking, where she was held for about an hour before being returned to the 60th precinct. She spent the night at the 60th precinct and was returned to Brooklyn Central Booking at about 11:00 a.m. the next day, July 9, 2009. She was arraigned in the evening.

21. On July 20, 2010, plaintiff's criminal case was dismissed for facial insufficiency. Plaintiff returned to court regularly for more than one year to fight the charges against her.

22. Plaintiff lost her job working with handicap people as a result of having an open pending case.

23. Plaintiff filed a complaint with the Civilian Complaint Review Board, but her criminal counsel advised against giving a statement to the CCRB prior to the disposition of her criminal case. The CCRB closed her case in January 2009, six months before her criminal case was dismissed.

24. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

25. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

26. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a. Violation of her rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b. Violation of her rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c. Violation of her New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d. Violation of her New York State Constitutional rights under Article 1, Section 6 to due process;

e. Physical pain and suffering;

f. Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience, anxiety; and,

g. Loss of liberty.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
### False Arrest and False Imprisonment
### (Against Officer Defendants)

27. The above paragraphs are here incorporated by reference.

28. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

29. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

30. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

31. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, imprisoned and falsely charged.

32. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

33. All of this occurred without any illegal conduct by plaintiff.

34. All charges against plaintiff were dismissed.

35. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the United States Constitution.

36. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

37. The above paragraphs are here incorporated by reference.

38. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

39. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

40. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

41. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

42. At all times, the unlawful, wrongful, and false arrest and imprisonment of

plaintiff was without basis and without probable cause or reasonable suspicion.

43. All of this occurred without any illegal conduct by plaintiff.

44. All charges against plaintiff were dismissed.

45. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

46. Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiff.

47. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the Constitution of the State of New York.

48. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

49. The above paragraphs are here incorporated by reference.

50. Defendants subjected plaintiff to false arrest, false imprisonment, and

deprivation of liberty without probable cause.

51. Defendants intended to confine plaintiff, plaintiff was conscious of her confinement and did not consent to his confinement.

52. All charges against plaintiff were dismissed.

53. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

54. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

FOURTH CAUSE OF ACTION
Malicious Prosecution
(Against All Defendants)

55. The preceding paragraphs are here incorporated by reference.

56. Defendants, acting with malice, initiated a prosecution against plaintiff and caused her to be prosecuted.

57. Defendants did not have probable cause to initiate proceeding.

58. The criminal proceedings were terminated in plaintiff's favor.

59. Defendants have deprived plaintiff of her civil, constitutional and statutory rights and have conspired to deprive her of such rights and are liable to plaintiff under 42 U.S.C. §1983, New York State common law, and the New York State Constitution.

60. As a result of the malicious prosecution implemented by defendants, plaintiff was damaged.

### FIFTH CAUSE OF ACTION
### 42 U.S.C. §1983 – Excessive Force
### (Against Officer Defendants)

61. The above paragraphs are here incorporated by reference.

62. By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of her rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

63. In addition, the officer defendants conspired amongst themselves to deprive plaintiff of her constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

64. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the United States Constitution.

65. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### SIXTH CAUSE OF ACTION
### New York State Constitution Art. I § 12 – Excessive Force
### (Against All Defendants)

66. The above paragraphs are here incorporated by reference.

67. By using excessive force against plaintiff, and failing to intervene on behalf of

one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by Article I Section 12 of the New York State Constitution.

68. In addition, the officer defendants conspired amongst themselves to deprive plaintiff of her constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

69. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

70. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the New York State Constitution.

71. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SEVENTH CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

72. The above paragraphs are here incorporated by reference.

73. Upon approaching, pushing, punching, handcuffing and arresting plaintiff,

defendants made plaintiff fear for her physical well-being and safety and placed her in apprehension of immediate harmful and/or offensive touching.

74. Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching without her consent.

75. Defendants used excessive and unnecessary force with plaintiff.

76. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

77. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### EIGHTH CAUSE OF ACTION
Negligent Hiring & Retention
(Against City Defendant)

78. The above paragraphs are here incorporated by reference.

79. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

80. Upon information and belief, defendant City, through the NYPD, owed a duty of care, to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

81. Upon information and belief, defendant officers were incompetent and unfit for their positions.

82. Upon information and belief, defendant City knew or should have known

through exercise of reasonable diligence that the officer defendants were potentially dangerous.

83. Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

84. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

## NINTH CAUSE OF ACTION
## MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

85. The above paragraphs are here incorporated by reference.

86. The City is liable for the damages suffered by plaintiff in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

87. The aforesaid event underlying plaintiff's factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

88. The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[1]

89. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

90. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline,

---

[1] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18,

resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

91. The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the lack criminal evidence that such stop and frisks actually produce, and despite the humiliation, inconvenience and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result. In 2008, of the 531,159 New Yorkers were stopped by the police, 465,413 were totally innocent (88 percent). From the total, 271,602 were black (51 percent); 167,111 were Latino (32 percent); and 57,407 were white (11 percent). In 2007, of the 468,732 New Yorkers were stopped by the police, 407,923 were totally innocent (87 percent). From the total in 2007, 242,373 were black (52 percent), 142,903 were Latino (31 percent), 52,715 were white (11 percent).[2]

92. The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[3]

93. The Civilian Complaint Review Board ("the CCRB"), a City police oversight

---

2010.
[2] See New York Civil Liberties Union "Stop and Frisk Report" available at http://www.nyclu.org/issues/racial-justice/stop-and-frisk-practices last visited on February 18, 2010. On the website, the NYCLU collects the same data back to 2004.
[3] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited May 26, 2010.

agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

94. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. In 2002, the percentage of officers who were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[4] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions. This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

95. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

96. All of the aforementioned has created a climate where police officers and detectives make lies to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

97. The City is aware that all of the aforementioned has resulted in violations of

---

[4] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police

citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

98. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff's punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff's reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

---

misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006"

DATED:      September 3, 2010
            Brooklyn, New York

                                              Respectfully yours,

TO:
            City of New York                  By: Cynthia Conti-Cook
            100 Church Street                 Bar# CC0778
            New York, NY  10007               Stoll, Glickman & Bellina, LLP
                                              Attorneys for Plaintiff
                                              71 Nevins Street
                                              Brooklyn, NY  11217
                                              (718) 852-3710
                                              (718) 852-3586
                                              cconti-cook@stollglickman.com